No. ——

First Circuit

---

### BLANCHARD v. MARQUETTE BROTHERS ET AL

---

(June 7, 1927. Opinion and Decree.)
(June 28, 1927. Rehearing Refused.)

---

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Fraudulent Conveyances—Par. 26, 74.**
The sale of a business in bulk without complying with Section 4 of Act 114 of 1912, by supplying a written list of creditors with the amount of indebted-

ness due to each and with knowledge of the purchaser of the insolvent condition of the seller; is a fraudulent contract and can be annulled under Articles 1970 to 1977 of the Civil Code.

Appeal from the Parish of Assumption. Hon. Sam A. LeBlanc, Judge.

Action by Alphonse B. Blanchard against Marquette Brothers et al.

There was judgment for plaintiff and defendants appealed.

Judgment affirmed.

Gilbert & Gianelloni, of Napoleonville, attorneys for plaintiff, appellee.

C. C. Weber, of Donaldsonville, and A. N. Simmons, of Napoleonville, attorneys for defendant, appellant.

LECHE, J. The defendant, a commercial firm composed of Martin and Adolph Marquette, conducted a meat market and was engaged in the butcher business in the town of Napoleonville. It was indebted to plaintiff in the sum of Three hundred twenty and 05-100 dollars. Plaintiff instituted the present suit for the recovery of his claim and at the same time alleging that defendant was insolvent, had made a fraudulent sale of its property to one Felix Acosta, he obtained a writ of attachment under which the property was seized and attached.

The judgment of the District Court is in favor of plaintiff, revokes the sale made to Acosta and orders that the property seized be sold to satisfy plaintiff's claim. From that judgment, Acosta alone has appealed.

The only issues involved on this appeal are whether defendant at the time it sold its property to Acosta, was insolvent, and whether Acosta was aware of the fact that defendant was insolvent. The testimony in the record is clear to the effect that both of these questions should be answered in the affirmative.

Defendant firm owned the outfit and the paraphernalia necessary to operate its business in Napoleonville and it also owned a tract of land situated in the Parish of Assumption. The land was mortgaged for $1300.00, represented by two mortgages, the first for $800.00 and the second for $500.00. Mr. Philip H. Gilbert, president of the Bank of Assumption, holder of the second mortgage, testifies that when his bank was consolidated with the Bank of Napoleonville, the $500.00 mortgage note was, a short time previously appraised below its face value in making the merger, for the reason that it was not believed that the property would realize enough to pay both mortgages.

The act of sale to Acosta was made in consideration of $1,605.64, accepted as full value for the machinery and outfit of the meat market and for horses and carts used in the butcher business. When the sale was passed, defendant owed Acosta $1826.74, and it also owed plaintiff $320.05, it owed Jos. Barbera $284.83, and it owed Swift & Co. $334.56.

The manager of defendant firm frankly admits that he sold to Acosta because he owed him the most, meaning the largest debt. In other words, he admits that the sale was made in order to prefer Acosta over his other creditors. He knew the firm was insolvent.

Acosta had been dealing with the defendant since May 4, 1925, and had sold cattle to it, at various times, the prices whereof totaled $4717.24, of which amount defendant had paid $2890.50, leaving the aforesaid balance due of $1826.74, when the sale was made on May 14, 1926. He acknowledges that some of the checks by which he was paid had to be held back, and that the last check he received from defendant never was paid at all.

One of the circumstances in the act of sale determinative of the issues herein, is to the effect that the members of the firm in making this sale of their business in bulk to Acosta, swore that the property conveyed was not affected with any vendor's lien or privilege of any kind, save taxes. They did not furnish as required by Section 4 of Act 114 of 1912, page 136, a written list of their creditors with the amount of indebtedness due to each.

Again Acosta says in the first part of his testimony that he did not care to buy the business of defendant, that he knew defendant owed several hundred dollars to other persons and he acknowledges (Rec. p. 13) that he never did believe that defendant was in a solvent condition.

We believe the proof fully sustains plaintiff's cause of action. C. C. 1970-1977.

For these reasons the judgment appealed from is affirmed.